UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:25-cv-102-LLK

GEORGE S.[1] PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review pursuant to 42 U.S.C. § 405(b) of the Final Decision of the Commissioner denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. [DN 1].[2] Plaintiff's Brief is at DN 14, the Commissioner's responsive Fact and Law Summary is at DN 19, and Plaintiff's Reply is at DN 20. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 12]. The matter is now ripe for determination.

After examining the administrative record, the Administrative Law Judge's (ALJ's) Decision, the arguments of the parties, and the applicable authorities, the Court finds that Plaintiff's two arguments are unpersuasive, the ALJ's Decision is supported by substantial evidence, and the ALJ's findings comport with applicable law. Accordingly, the Court will AFFIRM the Commissioner's Final Decision and DISMISS Plaintiff's Complaint.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this Report and Recommendation is shortened to first name and last initial.

[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

## I. BACKGROUND

**Administrative History**. Plaintiff filed an application for DIB benefits on April 25, 2023, alleging disability from February 1, 2021, at age 49 as a result of chronic neck pain, chronic back pain, and diabetes. [DN 11] at 234. The claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. The in-person hearing was conducted on May 16, 2024, before ALJ David Peeples with attorney Nathan Craig attending with Plaintiff. [DN 11] at 45-81. Also attending and testifying during the hearing was vocational expert, Stephanie Barnes. *Id*. On July 12, 2024, ALJ Peeples issued an unfavorable Decision finding that Plaintiff was not disabled within the meaning of the Act. [DN 11] at 30-39.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council; on May 12, 2025, review was denied. [DN 11] at 5. At that point, the ALJ's Decision became the final decision of the Commissioner. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). This Court will be reviewing the ALJ's Decision and the evidence that was contained within the administrative record at the time the ALJ rendered his unfavorable Decision. 42 U.S.C. § 405(g).

**The ALJ's Decision**. The Decision denying Plaintiff's claim for DIB was based upon the five-step sequential evaluation process applicable in all Social Security disability cases. The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2026. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 12, 2021, the alleged onset date (20 CFR 404.1571 *et seq*.).

At Step Two, the ALJ found that Plaintiff has the following severe impairments: Cervicalgia; Degenerative Disc Disease; and Diabetes Mellitus type II with Polyneuropathy (20 CFR 404.1520(c)).

At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

As in any case that proceeds beyond Step Three, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). The ALJ found that, notwithstanding his impairments, Plaintiff retains the RFC to perform medium work with certain limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except lifting and/or carrying up to fifty pounds occasionally and twenty-five pounds frequently, standing and/or walking six hours total, in an eight-hour day, with no longer than thirty minutes of standing or walking at one time, and sitting for six hours total, in an eight-hour day. The claimant can push and/or pull within lifting and/or carrying limitations. He can frequently climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger with his left upper extremity. He should avoid concentrated exposure to vibration and hazards, such as unprotected heights, and moving and/or mechanical parts.

ALJ's Decision, [DN 11] at 33.

At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work (20 CFR 404.1565). The ALJ made additional findings that Plaintiff was born on April 27, 1971, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; that he subsequently changed age category to closely approaching advanced age (20 CFR 404.1563); that he has at least a high school education (20 CFR 404.1564); and that

transferability of job skills is not an issue in this case because claimant's past relevant work is unskilled (20 CFR 404.1568).

At Step Five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 12, 2021, through the date of the decision (20 CFR 404.1520(g)).

## II. STANDARD OF REVIEW

The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of

substantial evidence supporting the opposite conclusion. *Id*. As described by the Supreme Court, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

## III. DISCUSSION

**Arguments of the Parties.** Plaintiff claims that the ALJ made two errors as a matter of law: 1) by failing to adequately assess the supportability and consistency of the opinions of state agency experts Drs. P. Saranga and Daniel Meece; and 2) by failing to adequately assess the Plaintiff's RFC to include manipulative limitations for handling and fingering. [DN 14] at 2. Plaintiff contends that the ALJ's supportability and consistency analysis was deficient and failed to meet the regulatory requirements. [DN 14] at 13-14. As a result, Plaintiff argues that the hypotheticals posed to the VE were flawed. Plaintiff contends that the RFC is deficient because substantial evidence supports restrictions for manipulative limitations due to the ALJ's finding of severe diabetes mellitus type II with polyneuropathy impairment. [DN 14] at 19.

Defendant responds that the ALJ's assessment of the prior administrative medical findings (PAMFs) of the state agency physicians was reasonable, and that courts recognize that it is more challenging to distinguish supportability and consistency in PAMFs. Nonetheless, Defendant contends that the ALJ properly "considered the supportability of the state agency medical consultants' opinions with respect to the other medical evidence of record, citing specific evidence in support of his evaluation." [DN 19] at 5, quoting *Darrell C. v. Comm'r of Soc. Sec.*, No. 3:25-cv-9, 2026 WL 246914, at *6 (W.D. Ky. Jan. 13, 2026). Regarding the lack of manipulative limitations in the ALJ's RFC findings, the Commissioner contends that Plaintiff ultimately bears

the burden of showing that he was more limited than the RFC provided, but failed to do so. Each of these arguments will be addressed below.

**Hearing Testimony**. Plaintiff testified at his hearing before ALJ Peeples that he lives with his wife in Cadiz, Kentucky, that he completed 10th grade in school, and later obtained his GED. [DN 11] at 53-54. He indicated that he had a driver's license and the ability to drive. [DN 11] at 55. Plaintiff testified to prior work as a maintenance tech, propane delivery truck driver, transmission assembler, welder, farm laborer, over-the-road delivery driver, and truck mechanic. [DN 11] at 56-62. Plaintiff indicated that his most significant physical problem was his neck, followed by his hip area, then diabetes symptoms. [DN 11] at 63. He indicated that he has some narrowing in his cervical/neck area which caused migraines that lasted a couple of hours (sometimes longer), resulted in ER visits, and required that he retreat to a dark room. [DN 11] at 64-65. Plaintiff also discussed radiating pain from his neck to his left arm (and sometimes right arm), which affected his ability to lift more than ten pounds. [DN 11] at 65-66. Plaintiff discussed his hip pain as radiating, shooting pain from his hip joint down his left leg which affected his ability to walk and stand for long periods, to make sudden turns, and to bend over to pick something up. [DN 11] at 66, 72-73. Regarding diabetes, Plaintiff indicated he got dizzy spells and blurred vision when his sugar was high, had burning neuropathy in his legs, and that his blood sugar readings had been in the 400s recently. [DN 11] at 67, 70-71. Plaintiff estimated that he could stand/walk for 20 minutes before pain radiated down his legs, and that he must lay down four or five times per day for relief of his leg neuropathy and low back pain. [DN 11] at 67-68. Plaintiff testified to a loss of grip strength and sensation with numbness in the palm of his left hand, such that he could not open a pickle jar. [DN 11] at 69. Plaintiff treated with pain management. [DN 11] at 69.

**The ALJ's supportability and consistency assessments comport with the regulations.** Under the new regulations that apply to this case, 20 C.F.R. §§ 404.1520c, an ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 404.1520c(a). Instead, the ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(a), (c). Of these five factors "[t]he most important ... are supportability and consistency." *Id.* The supportability factor states that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id.* §§ 404.1520c(c)(1). The consistency factor states that, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* §§ 404.1520c(c)(2).

For these two factors, the ALJ is required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* This "mandatory articulation requirement" has been said to "serve[ ] the same purposes as the good reasons requirement of the treating physician rule" because "[b]y requiring ALJs to articulate their analysis of the most important factors to consider ... the requirement permits meaningful judicial

review" and "ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive." *Lorraine R. v. Comm'r of Soc Sec. Admin.*, No. 3:20-cv-00396, 2022 WL 4232839, *4–*5 (S.D. Ohio Sept. 14, 2022).

Notably, the only medical opinion evidence contained in the record is from the state agency medical consultants, Dr. Saranga (June 2023 initial prior agency medical finding), [DN 11] at 87, and Dr. Meece (September 2023 reconsideration-level prior agency medical finding), [DN 11] at 95. No treating or other medical source opined greater restrictions than those opined by the state agency medical consultants or found by the ALJ. In adopting the PAMFs of state agency Drs. Saranga and Meece, the ALJ noted:

> The initial prior agency medical finding was completed by Dr. Saranga, MD., in June 2023, and the reconsideration-level prior agency medical finding was completed by Dr. Meece, MD., in September 2023. (Exhibits 2A, 4A). They identified a range of medium work with frequently climbing ramps and stairs, occasionally climbing ladders, ropes or scaffolds, and avoiding concentrated exposure to vibration and hazards. **The undersigned finds these findings to be persuasive, because they are consistent with the longitudinal evidence, including the claimant's hearing testimony, and support the limitations in the residual functional capacity above.** Diagnostic imaging showed only mild to moderate degenerative changes to the claimant's spine and his symptoms were treated conservatively with little affect to his activities of daily living. (Exhibits 1F, 2F, 4F, 5F, 6F, 7F, 8F, 9F, 11F, 12F, 13F, 14F, 15F).

ALJ Decision, [DN 11] at 37. (Emphasis added.)

Plaintiff posits that the highlighted portion of the ALJ's assessment finds the "opinions 'persuasive, because they are **consistent** with the longitudinal evidence' but provides no analysis of **supportability** as to whether each doctor adequately explained their opinion using their own clinical findings and supporting rationale." [DN 14] at 13. (Emphasis added.) Arguing that the ALJ conflated consistency and supportability, Plaintiff contends that the ALJ failed to meet the regulatory requirements for separate evaluation of each factor. *Id*. Plaintiff contends that the ALJ's

failure to properly articulate his persuasiveness analysis under 20 C.F.R. § 404.1520c(c)(1) is legal error requiring reversal because the lack of such discussion prohibits meaningful judicial review. [DN 14] at 14.

As noted above, the supportability factor relates to the "objective medical evidence and supporting explanations presented by a medical source [] to support his or her medical opinion(s). 20 C.F.R. § 404.1520c(c)(1). The consistency factor concerns the relation of a medical source's opinion to "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The Commissioner notes that courts in this circuit and district have recognized that the opinions of state agency medical and psychological consultants are uniquely situated in terms of the ALJ's ability to conduct a supportability and consistency analysis:

> [T]he Court notes the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer—like a state agency physician—who forms her opinion after a holistic review of the medical evidence of record. Consider, for example, a case in which there has been little or no change to the medical evidence of record between the time the reviewer issues her finding and the ALJ conducts a hearing. In that instance, the evidence upon which the reviewer supported her finding—the complete medical record at the time of her finding—would be virtually identical to the evidence with which the opinion is consistent or inconsistent—the complete medical record at the time of the ALJ's hearing. The ALJ is left in a position in which she is unable to consider supportability without simultaneously addressing consistency, and vice versa. A plaintiff might semantically allege error in such a case—saying that the ALJ only addressed consistency because she compared the reviewer's opinion to the entirety of the record. But the ALJ would have still fulfilled the purpose of the regulation: to give a fulsome review to medical opinions and prior administrative findings, paying particular attention both to how the opinions are internally supported and explained, and how they compare to the record as a whole.
>
> Contrast this with a medical opinion rendered by a treating physician. There, supportability and consistency are more clearly distinguished. The physician supports her opinion with her own treatment notes, objective medical findings, and experience with the plaintiff. Her opinion is consistent (or not) with the entire universe of the medical evidence of record.

*Darrell C. v. Comm'r of Soc. Sec.*, No. 3:25-cv-00009, 2026 WL 246914, at *6 (W.D. Ky. Jan. 13, 2026) (citing district court opinions throughout the Sixth Circuit addressing same).

The Court finds that here, like in *Darrell C.*, the ALJ properly considered the supportability and consistency of the state agency medical consultants' opinions with respect to the other medical evidence of record, citing to specific evidence in support of his evaluation. Notably, the ALJ cited to thirteen medical records from some eleven different providers supportive of the PAMFs that Plaintiff remained capable of performing medium work with certain climbing and environmental limitations, as "diagnostic imaging showed only mild to moderate degenerative changes to the claimant's spine and his symptoms were treated conservatively with little affect to his activities of daily living." [DN 11] at 37. The ALJ's review and characterization of the record is consistent with this Court's review, supported by substantial evidence, and under the circumstances, comports with the supportability and consistency articulation requirements. With regard to the ALJ's consideration of the consistency factor, the Plaintiff contends that the ALJ's consistency finding was conclusory and therefore insufficient. However, this Court's reading of the Decision as a whole—including the ALJ's thorough review of the medical evidence and in light of both of the ALJ's articulation[3] sentences—leads the Court to conclude that the ALJ's analysis of the state agency medical consultants' opinions is legally sufficient.

**The ALJ did not err by failing to include manipulative limitations in his RFC findings**. In assessing an individual's RFC, the ALJ must consider the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. § 404.1529, SSR 16-3p. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings that show the existence of a medical

[3] The ALJ articulated that the state agency opinions "were persuasive, because they are consistent with the longitudinal evidence, including the claimant's hearing testimony, and support the limitations in the residual functional capacity above. Diagnostic imaging showed only the mild to moderate degenerative changes to the claimant's spine and his symptoms were treated conservatively with little affect to his activities of daily living. (Exhibits 1F, 2F, 4F, 5F, 6F, 7F, 8F, 9F, 11F, 12F, 13F, 14F, 15F)." [DN 11] at 37.

impairment that could reasonably be expected to give rise to the pain or other symptoms alleged. *Id*. § 404.1529(a). RFC is the ALJ's ultimate determination of what a claimant can still do despite their limitations, and the ALJ is charged with determining a claimant's RFC "[b]ased on all the relevant evidence in [his] case record." 20 C.F.R. § 404.1545(a). Thus, in making the RFC determination, the ALJ must necessarily evaluate the persuasiveness of the medical source statements and prior administrative findings in the record as well as assess the claimant's subjective allegations. 20 CFR §§ 404.1520c, 404.1529(a). To support his RFC findings in this case, the ALJ properly relied upon objective medical and other evidence in the record. The Decision indicates that the ALJ's RFC was prepared "[a]fter careful consideration of the entire record," and the Court notes that the RFC and symptom analysis constitutes some five pages of the ten-page Decision. [DN 11] at 33-37.

A Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec*., 786 F.App'x 586, 589 (6th Cir. 2019). Typically, a claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of his subjective symptoms. Plaintiff identifies no treating or other medical source who opined greater restrictions than those found by the ALJ, and the state agency program physicians opined <u>fewer</u> restrictions than those found by the ALJ. Plaintiff seeks to prevail by asserting that the ALJ improperly evaluated the limiting effects of left arm and hand tingling and numbness and erred by failing to provide manipulative limitations for handling and fingering in the RFC. [DN 14] at 19-21. The Court is not persuaded by this argument.

Plaintiff contends that the RFC erroneously lacks any functional limitations that correspond to the diabetes mellitus type II with polyneuropathy impairment found by the ALJ. As aptly noted

by the Commissioner, it is Plaintiff's burden to show that he is disabled. 20 C.F.R. § 404.1512. Furthermore, an ALJ is only required to include in the RFC those limitations that he finds credible and supported by the record. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x, 165, 170 (6th Cir. 2020). The only medical opinions contained in the record—those of state agency physicians Saranga and Meece—contained no manipulative limitations whatsoever.[4] The ALJ acknowledged Plaintiff's testimony regarding left upper extremity symptoms as well as the medical evidence regarding pain, numbness and tingling, reduced grip and sensation, and "electrophysiologic evidence of mild left median nerve compromise at or near the wrist" (without evidence of radiculopathic process involving the upper extremity). [DN 11] at 36. It is not apparent to the Court that the RFC is devoid of manipulative limitations as Plaintiff contends. The full range of "medium" work contemplates 6 hours of standing/walking per 8-hour workday (with sitting during the remaining 2 hours) and lifting no more than 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c); Social Security Ruling (SSR) 83-10, 1983 WL 31251. Medium work also generally requires use of the arms and hands as necessary "to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms." SSR 83-10. Based upon the definition of medium work in the regulations, the ALJ's limiting Plaintiff to frequent (limited to one-third to two-thirds of an 8-hour workday as opposed to constant) handling

[4]In the absence of any medical opinion evidence of manipulative limitations, the Court disagrees with Plaintiff's position that there was still inconsistent evidence that the ALJ was required to reconcile—that the ALJ's decision does not contain any narrative explanation as to if, or how, "[d]iagnostic imaging [results] regarding degenerative changes to [Plaintiff]'s spine" could be related to Plaintiff's upper extremities. [DN 20] at 4; *see also* 20 C.F.R. § 404.1520b(b) ("In some situations, we may not be able to make our determination or decision because the evidence in your case record is insufficient or inconsistent. We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision. We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques. If the evidence in your case record is insufficient or inconsistent, we may need to take ... additional actions[.]")

and fingering with his left upper extremity appears to be the ALJ giving him the benefit of the doubt and assigning manipulative limitations.

Furthermore, the ALJ did not fail to "address the persuasiveness of any handling and fingering limitations from any medical expert" as argued by Plaintiff, because there were none. [DN 14] at 21. The medical notations referenced in Plaintiff's brief are not "medical opinions." Treatment notes do not constitute medical opinions under the applicable regulations. 20 C.F.R. § 404.1513(a)(2), defines a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in certain abilities. The records cited by Plaintiff do not assess functional limitations greater than those found by the ALJ, as a mere diagnosis does not indicate any specific functional limitations. *Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990) ("[i]t is well established that a diagnosis alone does not indicate any functional limitations caused by an impairment."). Instead, the ALJ was required to consider the medical records cited by Plaintiff but was not required to explicitly discuss them in his opinion. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.")

Here, the ALJ thoroughly reviewed the medical and other evidence contained in the administrative record, noting that Plaintiff's symptoms were treated conservatively, that the treating physician recommended against surgical intervention,[5] that Plaintiff did not always follow

---

[5] The medical record indicates that Plaintiff sought treatment with two separate neurosurgeons. Dr. Titsworth's records suggest poor effort during examination [DN 11] at 520, 522; MGW Neurosurgical visit with Jason Rust, APRN suggests malingering [DN 11] at 478; and Paducah Neurosurgery's Tiffany Cates, APRN, recommended continued pain management (not surgery). [DN 11] at 565.

recommended treatment modalities including medication compliance,[6] and dietary and lifestyle changes recommended by his PCP. [DN 11] at 35. The Court's review of the medical evidence is consistent with the ALJ's review. The ALJ's Decision includes a detailed discussion of the Plaintiff's impairments, the medical and other evidence of record, and the ALJ's reasoning for either accepting or rejecting same. As no treating source had assigned any work-related limitations, the ALJ nonetheless adopted the state agency medical assessments finding that Plaintiff could perform medium exertional work (with limitations of only frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, or scaffolds, and avoiding concentrated exposure to vibration and hazards) and extended Plaintiff the benefit of the doubt by including *greater* limitations in the RFC: limiting standing and/or walking to six hours total, with no longer than thirty minutes of standing or walking at one time, and sitting for six hours total, in an eight-hour day; limiting pushing/pulling to the lifting/carrying weight limitations (as opposed to unlimited); frequent (as opposed to unlimited) handling and fingering with the left upper extremity. ALJ's Decision, [DN 11] at 33. The Court finds no error in the ALJ's assessment of the limitations contained in the RFC.

## IV. CONCLUSION AND ORDER

Having reviewed the medical records, the Plaintiff's testimony, the state agency findings and all other evidence in the administrative record, the undersigned finds that the ALJ's Decision stands solidly on substantial evidence. Most disability claims have medical and other evidence that could support findings either way; it is the ALJ's job to weigh that evidence and articulate the reasons for either accepting or rejecting it. "[A]s long as substantial evidence supports the

---

[6] Medical record from Owensboro Health Pain Management indicates that Plaintiff was previously discharged from treatment due to medication issues because his wife "got into my meds." [DN 11] at 569.

Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's Decision is supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED. Plaintiff's Motion for Relief from Pro Hac Vice Renewal Fee [DN 22] is DENIED as MOOT, and Plaintiff's Complaint is DISMISSED. A final judgment will be entered separately.

September 30, 2026

**Lanny King, Magistrate Judge**
**United States District Court**